UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| NIPPON CARBIDE INDUSTRIES CO., INC., <br><br> Applicant, <br><br> v. <br><br> 3M Company, <br><br> Respondent. | Case No.: |

### *EX PARTE* APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782

Applicant NIPPON CARBIDE INDUSTRIES ("Nippon Carbide" or "Applicant), by and through its undersigned attorneys, respectfully submits this *ex parte* Application pursuant to 28 U.S.C. § 1782 for an order authorizing subpoenas substantially in the form of Exhibit A for the production of documents by 3M relating to its supply of raw prism sheeting, or "Jumbo Roll," used in the manufacturing of retroreflective sheets, to its German and Japanese affiliates, for use in pending litigation in the courts of Germany and Japan. Nippon Carbide respectfully requests that this Court order that the documents shall be produced at the offices of Messerli Kramer, 100 South 5th Street, Minneapolis, Minnesota, by May 15, 2023 unless otherwise agreed by the parties.

**Nature of the Proceeding**

1. This Application arises under 28 U.S.C. § 1782, which permits a district court to order discovery "for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782(a).

2783269.v1

2.  Nippon Carbide has initiated patent infringement suits that are pending against 3M's Japanese and German affiliates, in Japan and Germany, respectively, which are described in more detail below. There has been a finding of infringement in both of these proceedings, and, in both proceedings, the parties are currently litigating the issue of damages.

3.  Nippon Carbide seeks an order for discovery under 28 U.S.C. § 1782(a) to obtain documents for use in its suits against 3M's Japanese and German affiliates. 3M possesses information relevant to calculating Nippon Carbide's damages in connection with these proceedings that is not otherwise available to Nippon Carbide. More specifically, 3M has information that will tend to show both the quantity of infringing products sold by its Japanese and German affiliates and their costs associated with the manufacture of infringing products. Although Nippon Carbide has requested such information directly from 3M's Japanese and German affiliates, Nippon Carbide has reason to believe that the information they have disclosed is both inaccurate and incomplete.

4.  Accordingly, Nippon Carbide respectfully requests that this Court authorize the issuance of a subpoena to 3M in substantially the same form as Exhibit A attached hereto. This Court has the authority to permit the issuance of the subpoenas *ex parte*. *Gushlak v. Gushlak*, Civ. Nos. 11-2584, 11-3808, 2012 WL 2549813, at *1 (2d Cir. July 3, 2012); *see also In re Application of Canadian Private Copying Collective*, No. 11-MC-0028, 2011 WL 1641982, at **1, 3 (D. Minn. Apr. 14, 2011); *In re Application of Canadian Private Copying Collective*, No. 11-MC-0028, 2011 WL 1642432, at *1 (D. Minn. May 2, 2011).

2783269.v1

**Parties to the Proceeding**

5. Applicant Nippon Carbide Industries Co., Inc. is a corporation organized under the laws of Japan.

6. On information and belief, Respondent 3M Co. is a Delaware company with its principal place of business in Saint Paul, Minnesota.

**Jurisdiction and Venue**

7. This Court has jurisdiction over the subject matter of Nippon Carbide's claims under 28 U.S.C. section 1782(a) and 28 U.S.C. section 1331.

8. Venue is proper in this District under 28 U.S.C. section 1782(a) because 3M is located within the District.

**Background**

9. Nippon Carbide manufactures functional chemicals, ceramic substrates, films, retroreflective sheeting and other products.

10. Nippon Carbide held a European patent (EP 1193511) and a Japanese patent (JP 4466883) relating to the manufacture of retroreflective sheeting, which is a flexible, reflective material that is primarily used to increase the nighttime visibility of traffic signs, high-visibility clothing, and other similar products. It also has a variety of other applications in connection with, for example, barcode labels, motion picture special effects and autonomous vehicle navigation.

11. 3M's German and Japanese affiliates – 3M Deutschland GmbH and 3M Japan Products Limited ("3M Japan Products") and 3M Japan Innovations Limited ("3M JI"") (collectively, "3M Japan") – were engaged in the manufacture and sale retroreflective

sheeting products while Applicant's patents were in effect. More specifically, 3M Deutschland manufactured and sold "High Intensity Prismatic Reflective Sheeting 3930 Series" products and 3M Japan Products manufactured "3930 Series," "2930 Series" and "PX8470 Series" products and sold them to 3M JI for resell. Each of these products is manufactured by applying an adhesive layer and a release liner to raw prism sheeting, or "Jumbo Roll," supplied by 3M.

12. Each of these aforementioned products infringed Applicant's patents. Applicant therefore filed suit against 3M Deutschland in Germany, and filed suit against 3M Japan in Japan, alleging patent infringement. In both the German and Japanese proceedings, the Courts determined that the retroreflective sheeting products manufactured and sold by 3M's Japanese and German affiliates infringed Nippon Carbide's applicable patents. Declaration of Kenji Kuroda ("Kuroda Dec."), ¶ 4; Declaration of Christian Holger Folz ("Folz Dec.), ¶ 4.

13. In both proceedings, while the issue of infringement has been decided in Nippon Carbide's favor, the parties are still litigating the issue of damages due to Nippon Carbide. Kuroda Dec. at ¶ 5; Folz Dec. at ¶ 4.

14. Although Nippon Carbide has requested information from 3M's Japanese and German affiliates regarding the number of infringing products sold and their costs of manufacturing such products, which are relevant to calculating the damages Nippon Carbide has suffered from their infringement, as explained below, Nippon Carbide has reason to believe that the information they have provided is inaccurate and incomplete.

15. In the German proceeding, 3M Deutschland rendered an accounting of the sales of its infringing products and the costs of their manufacture on March 30, 2012, and then subsequently had to amend that accounting *eight times*, beginning in April 2012 and continuing through 2019. *See* Folz Dec., Ex. 1 (November 9, 2022 translation of Judgment of the Higher Regional Court Karlsruhe). An appellate court – the Higher Regional Court Karlsruhe – found that the information 3M Deutschland provided prior to 2019 "undisputedly had gaps and was thus incomplete and therefore incorrect," giving rise to the suspicion that the information it provided in 2019 was "incomplete as well." *Id.* at 20 ("By making Plaintiff wait until the eighth rendering of accounts supplemented by the ninth rendering of accounts, Defendant gave rise to the suspicion that the ninth rendering of accounts does not include all facts either."). The appellate court further found that "[i]n view of [3M Deutschland's] extensive refusal [to provide complete information] in the past, there is no reason to assume" there is only "a minor incompleteness" in the most-recent accounting information disclosed by 3M Deutschland. *Id.* at 23.

16. Similarly, in the Japanese proceeding, 3M Japan has failed to produce complete and accurate information regarding damages. In accordance with Japanese procedure, 3M Japan produced information relevant to damages, including information regarding its sales of infringing retroreflective sheeting products, to a neutral expert with a background in accounting who was tasked by the court with analyzing the information. Kuroda Dec. at ¶ 7. It is evident from the expert's report that 3M Japan has not provided complete or adequate information regarding damages for at least four reasons:

a. First, the information 3M Japan disclosed indicated that the square footage of Jumbo Rolls it purchased from 3M were equal to the square footage of retroreflective sheeting products it ultimately produced using the Jumbo Rolls. *Id.* at ¶ 9. There is, however, always some waste involved in the process of manufacturing retroreflective sheeting products, and it is therefore impossible that the square footage of finished retroreflective sheeting products could be equal to the square footage of Jumbo Rolls used to manufacture those products. *Id.*

b. Second, it is standard practice in the retroreflective sheeting manufacturing industry to assign lot numbers to Jumbo Rolls and, during the manufacturing process, to assign lot numbers to semi-finished product rolls and then finally to finished products. *Id.* at ¶ 10. Analyzing these lot numbers is the most accurate way to verify and assess 3M Japan's sales data because it allows one to track the manufacturing process from raw material to finished product. *Id.* Among other things, analyzing lot numbers would allow one to determine when 3M Japan switched to selling allegedly non-infringing products because the infringing and non-infringing products are made from different Jumbo Rolls. *Id.* Maintaining such lot numbers is standard practice in the retroreflective sheeting industry and for 3M Japan. *Id.* The court-appointed damages expert, however, was unable to analyze 3M Japan's sales data using lot numbers because 3M Japan had not disclosed sufficient lot number information to the expert. 3M Japan should have, but did not, disclose this lot number information to the court-appointed expert. *Id.*

c. Third, the information 3M Japan has disclosed is suspect because it has repeatedly had to supplement its disclosures of information in the Japanese proceedings, and has acknowledged that its initial disclosures were deficient. *Id.* at ¶ 11.

d. Fourth, the sales data disclosed by 3M Japan to the court-appointed damages expert does not include sales data for infringing products sold after March 5, 2010 that were manufactured from the inventory of Jumbo Rolls purchased before that date. *Id.* at ¶ 12.

17. An action to determine damages in the German proceeding is pending before the Regional Court Mannheim, and a hearing therein is scheduled for October 13, 2023. Folz Dec. ¶ 4. Similarly, infringement proceedings of second instance to determine

2783269.v1

damages (Reiwa 3 (NE) 10084) are pending before the Intellectual Property High Court of Japan.

18. Because the infringing products are manufactured by applying an adhesive layer and a release liner to Jumbo Rolls supplied by 3M and cutting them to the desired size, information 3M possesses regarding the amount it charges its affiliates for the Jumbo Rolls it exports to its affiliates and the quantity it exports to them (in number and size) will allow Nippon Carbide to verify the accuracy of the information 3M's affiliates have provided regarding the infringing products' sales and profitability and submit additional information regarding the manufacture and sale of the infringing products to the German and Japanese courts.

19. Attached hereto as Exhibit A is a subpoena that specifies the relevant documents Nippon Carbide seeks from 3M. The subpoena is narrowly-tailored because it is limited to specific information regarding the export of retroreflective sheeting, covering approximately the time periods when Nippon Carbide's relevant Japanese and European patents, respectively, have been in effect.

**The Application Meets All the Requirements of the Statute**

20. Section 1782 provides, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court. . . . The order may prescribe the practice and procedure, which may be in whole or part the practice and procedure of the foreign country or the international tribunal, for taking the

- 7 -

testimony or statement or producing the document or other thing. To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

21. An applicant seeking discovery under Section 1782 must establish that: "(1) the discovery is sought from a person found in the district; (2) the discovery is for use in a proceeding before a foreign tribunal; and (3) the applicant is an 'interested person' before such foreign tribunal." *Canadian Private Copying Collective*, 2011 WL 1641982, at *2; *In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 952 (D. Minn. 2007).

*The Discovery is Sought From a Person Found in the District*

22. 3M is likely to have information that is relevant to Nippon Carbide's disputes with its Japanese and German affiliates, as described above, because the information relates to 3M's supply of Jumbo Rolls to those affiliates for the manufacture of retroreflective sheeting.

23. According to available public records, 3M is found in this district because its principal place of business is in St. Paul, Minnesota.

*The Discovery is for Use in a Proceeding before a Foreign Tribunal*

24. An action to determine Nippon Carbide's damages due to 3M Deutschland's infringement is pending before the Regional Court of Mannheim and a hearing in that matter is scheduled for October 13, 2023.  Folz Dec. ¶ 4.

25. Similarly, infringement proceedings of second instance regarding Nippon Carbide's claims of patent infringement to determine damages is pending before Japan's Intellectual Property High Court.  Kuroda Dec. ¶ 5.

26. The information Nippon Carbide seeks from 3M is relevant to the issue of damages which is to be tried in both of the aforementioned proceedings. Accordingly, the discovery that is the subject of this Application is for use in proceedings before two separate foreign tribunals.

*Nippon Carbide is an 'Interested Person' Before the Foreign Tribunals*

27. A party to a foreign proceeding is an "interested person" before the foreign tribunal presiding over that proceeding. *See Intel*, 542 U.S. at 256; *Canadian Private Copying Collective*, 2011 WL 1641982, at *2.

28. As a party to the Japanese and German proceedings described above, Nippon Carbide is an "interested person" before those tribunals under Section 1782.

29. This application meets all the requirements of Section 1782.

**This Court Should Exercise Its Discretion Under Section 1782 to Grant this Application**

30. According to the Supreme Court, there are "four discretionary factors for courts to consider in determining whether to grant a § 1782 application: "(1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus inaccessible absent § 1782 aid; (2) the nature of the foreign tribunal, the character of the proceeding underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the § 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests." *Intel*, 542 U.S. at 264. These factors are based on the

two purposes of the statute—to encourage reciprocity in discovery by foreign governments and to provide an efficient means of assistance to participants in international litigation." *Canadian Private Copying Collective*, 2011 WL 1641982, at *2, citing *Intel*, 542 U.S. at 241, 247.

*The Documents Sought are not Within the Foreign Tribunal's Jurisdictional Reach, and are Thus Inaccessible Absent § 1782 Aid*

31. As set forth above, Nippon Carbide has reason to believe that both 3M Japan and 3M Deutschland have provided inaccurate and incomplete information regarding their sales and profits in connection with their infringing retroreflective sheeting products. *See* Kuroda Dec. at ¶¶ 6-12; Folz Dec., Ex. 1. Nippon Carbide has therefore been unable to obtain accurate information regarding their manufacturing costs and profits from them. Moreover, because 3M is not a party to the Japanese or German proceedings, Nippon Carbide is unable to obtain information from 3M directly in those proceedings. Kuroda Dec. at ¶ 13; Folz Dec. at ¶ 6; *see Intel*, 542 U.S. at 264 (while a foreign tribunal has jurisdiction over those appearing before it and can itself order them to produce evidence, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782); *In re Application of Canadian Copying Collective*, 2011 WL 1641982, at *3 (because the party with the information sought was "a non-party to the [foreign proceeding], the [foreign courts did] not have jurisdiction to obtain the documents without the use of § 1782"); *In re Application of Ching Chung Taoist Association of Hong Kong Ltd.*, No. 3:16-mc-80158-LB, 2016 WL 5339803, at *4 (N.D. Cal. Sept. 23, 2016)

(because persons from whom discovery was sought were not parties to the foreign proceeding, the foreign court did "not have jurisdiction over them, and [could not] order them to produce evidence.")

32. This factor, accordingly, weighs in favor of granting this Application.

*The Nature of the Foreign Tribunals, the Character of the Proceedings Underway Abroad, and the Receptivity of the Foreign Courts Abroad to U.S. Federal-Court Judicial Assistance Weigh in Favor of Granting this Application*

33. A Section 1782 applicant enjoys "a presumption in favor of foreign tribunal receptivity that can only be offset by reliable evidence that the tribunal would reject the evidence" obtained through the application. *Government of Ghana v. ProEnergy Services LLC*, No. 11-9002-MC-SOW, 2011 2652755, at *4 (E.D. Miss. June 6, 2011); *see also Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099-1100 (2d Cir. 1995) (courts "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782").

34. Here, both the Japanese and German courts would be receptive to assistance from this Court because the information Nippon Carbide seeks would be admissible in both the German and Japanese proceedings. *See* Kuroda Dec. at ¶ 14; Folz Dec. at ¶ 7. Further, both Japan and Germany have demonstrated their cooperation with United States courts in providing judicial assistance in litigation through the Hague Convention. *See* https://www.hcch.net/en/states/hcch-members/details1/?sid=47; https://www.hcch.net/en/states/hcch-members/details1/?sid=41]. Moreover, granting this Application would further the statutory purpose of Section 1782 to "encourage reciprocity

in discovery by foreign governments . . . ." *Canadian Private Copying Collective*, 2011 WL 1641982, at *2.

35. This factor, therefore, also weighs in favor of granting this Application.

*This Application Does Not Conceal an Attempt to Circumvent Foreign Proof-Gathering Restrictions or other Policies of a Foreign Country or the United States*

36. Nippon Carbide is aware of no proof-gathering restriction or policy of Japan or German that would prevent it from obtaining the type of information it seeks through this Application. Kuroda Dec. at ¶ 14; Folz Dec. at ¶ 7. Indeed, it has sought and obtained similar information from both 3M Deutschland and 3M Japan, even if those entities were less than forthcoming. The information Nippon Carbide seeks would be admissible in the foreign proceedings (Kuroda Dec. at ¶ 14; Folz Dec. at ¶ 7), but, in any event, there is no requirement that the evidence Nippon Carbide seeks through this application be discoverable or admissible in the foreign proceedings. *See Intel*, 542 U.S. at 242 ("nothing in § 1782(a)'s text limits a district court's production-order authority to materials discoverable in the foreign jurisdiction if located there"); *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 138 (3d Cir. 1985) ("Nor can concern for the ultimate admissibility of the discovered material be argued as a limit on section 1782 orders."). Nor is Nippon Carbide using this Application as a "vehicle to avoid or appeal an[y] unfavorable decision" by the foreign tribunals regarding the requested discovery, as the decisions in the German and Japanese courts have gone Nippon Carbide's way. *See Andover Healthcare Inc. v. 3M Co.*, No. 14-mc-44 (SRN/JJK), 2014 WL 4978476, at *7 (D. Minn. Oct. 6, 2014).

37. Accordingly, this factor also weighs in favor of granting this Application.

*This Application is Not Unduly Intrusive or Burdensome Because It Concerns Limited Information regarding 3M's Sales of One Product to Two of Its Foreign Affiliates*

38.   As set forth in Exhibit A, Nippon Carbide merely seeks information regarding 3M's sales of a single 3M product – Jumbo Rolls – to 3M Deutschland and 3M Japan over a limited period of time.  Moreover, it also seeks only a limited subset of information regarding those products – the amounts 3M has charged its foreign affiliates to export these products, the quantities of products sold (both in number of Rolls exported and size of the Rolls), and their corresponding US lot numbers – for only, approximately, the time periods during which Nippon Carbide's Japanese and European patents, respectively, have been in effect.

39.   This factor therefore also weighs in favor of granting this Application.

## CONCLUSION

For the foregoing reasons, Nippon Carbide respectfully requests that this Court grant the instant Application in its entirety and authorize Nippon Carbide to serve the subpoena attached hereto as Exhibit A.

**MESSERLI & KRAMER P.A.**

Dated: April 24, 2023

By:   /s/*Kevin D. Hofman*
          Kevin D. Hofman #179978
1400 Fifth Street Towers
100 South Fifth Street
Minneapolis, MN  55402
(612) 672-3600
khofman@messerlikramer.com

*Attorneys for Applicant Nippon Carbide Industries Co., Inc.*