UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| NIPPON CARBIDE INDUSTRIES CO., INC., | )<br>) |
| Applicant, | )<br>) |
| v. | ) Case No.: |
| 3M Company, | )<br>)<br>) |
| Respondent. | )<br>) |

**DECLARATION OF KENJI KURODA IN SUPPORT OF *EX PARTE* APPLICATION TO CONDUCT DISCOVERY PURSUANT TO 28 U.S.C. § 1782**

I, Kenji Kuroda, declare:

1. I am an individual over the age of eighteen years. I am an attorney for Applicant NIPPON CARBIDE INDUSTRIES CO., INC. ("Nippon Carbide") in Nippon Carbide's litigation against 3M Japan Products Limited ("3MJP") and 3M Japan Innovation Limited ("3MJI") in Japan, Intellectual Property High Court Reiwa 3 (Ne) 10084, Appeal of claims for injunction for patent infringement. I make this declaration in support of Nippon Carbide's Application to Conduct Discovery Pursuant to 28 U.S.C. § 1782.

2. I have personal knowledge of the facts set forth below, with the exception of those matters stated on information and belief, and as to those matters I believe them to be true. If called upon to testify, I could and would testify as follows:

3. I am a duly licensed attorney in Japan. I have been a practicing attorney for 37 years, and have 32 years of experience in patent litigation.

4. In Nippon Carbide's suit against 3MJP and 3MJI (collectively, "3M Japan") in Japan, the court has determined that that the retroreflective sheeting products manufactured by

3MJP and sold by 3M Japan infringe Nippon Carbide's patent (JP4466883) concerning retroreflective sheeting products.

5. While the issue of infringement has been decided in Nippon Carbide's favor, the parties are still litigating the issue of damages in infringement proceedings of the second instance pending before the Intellectual Property High Court in Japan.

6. Although Nippon Carbide has requested information from 3M Japan regarding the issue of damages, I am informed and believe that the information 3M Japan has provided regarding damages is inaccurate and incomplete.

7. In accordance with Japanese procedure, 3M Japan produced information relevant to damages, including information regarding its sales of infringing retroreflective sheeting products, to a neutral expert with a background in accounting who was tasked by the court with analyzing the information.

8. It is evident from the expert's report that 3M Japan has not provided complete or adequate information regarding damages for at least several reasons.

9. First, the information 3M Japan disclosed indicated that the square footage of Jumbo Rolls it purchased from 3M were equal to the square footage of retroreflective sheeting products it ultimately produced using the Jumbo Rolls. I have represented Nippon Carbide for 12 years and my representation of Nippon Carbide has required me to become familiar with the business of manufacturing and selling retroreflective sheeting products, including the technology involved in the manufacture of retroreflective sheeting products. Based on my understanding of the manufacturing process, it is impossible that the square footage of retroreflective products 3M Japan has produced could be equal to the square footage of Jumbo Rolls it has purchased from 3M, because there is always some waste involved in the manufacturing process.

10. Second, it is my understanding based on my knowledge of retroreflective sheeting business generally, and 3M Japan's retroreflective sheeting business specifically, that the most accurate way to analyze and assess 3M Japan's sales data is by analyzing lot numbers. Lot numbers are assigned to Jumbo Rolls and, during the manufacturing process, lot numbers are

assigned to semi-finished product rolls and finally to finished product rolls. Analyzing these lot numbers allows one to verify and assess 3M Japan's sales data by tracking the manufacturing process from raw material to finished product. Among other things, analyzing lot numbers would allow one to determine when 3M Japan switched to selling allegedly non-infringing products because the infringing and non-infringing products use different Jumbo Rolls. Maintaining such lot numbers is standard practice in the retroreflective sheeting industry and for 3M Japan. The court-appointed damages expert, however, stated in his report that he lacked sufficient information to analyze 3M Japan's sales data using lot numbers, meaning that 3M Japan had not disclosed sufficient lot number information to the expert. Therefore, on information and belief, 3M Japan had information regarding lot numbers that it should have, but did not, disclose to the expert.

11. Third, the information 3M Japan has disclosed is suspect because it has repeatedly had to supplement its disclosures, and has acknowledged that its initial disclosures were deficient. In its Investigative Report (3) (Defendants' Exhibit No. 58), 3M Japan explained that the sale of the infringing products had been completed by the end of June 2012. In its Eleventh Brief (dated March 3, 2020), Fourteenth Brief (dated April 22, 2020), and Seventeenth Brief (dated June 26, 2020), 3M Japan also asserted that the sale of the infringing products had ended by the end of June 2012. In response, Nippon Carbide repeatedly pointed out that such explanations and assertions were incorrect. Later, 3M Japan admitted in its Investigation Report (4) (dated September 25, 2020) (Defendant's Exhibit No. 69) that there were inaccuracies in the aforementioned Investigation Report (3).

12. Fourth, among the sales data 3M Japan has disclosed is some information regarding the inventory of the Jumbo Rolls it has used to manufacture the infringing products. The sales data disclosed by 3M Japan to the court-appointed damages expert, however, does not include sales data for infringing products that were manufactured from the inventory of Jumbo Rolls that had been purchased before March 5, 2010 and sold after that date. The sales data 3M Japan has disclosed is therefore incomplete and inaccurate for this reason as well.

13. Because 3M is not a party to the Japanese proceeding, Nippon Carbide is unable to obtain information from 3M directly in that proceeding.

14. Sales data, like the type of data Nippon Carbide seeks through this Application, is also discoverable in Japan, and this Application is therefore not an attempt to circumvent proof-gathering restrictions or other policies applicable in Japanese courts. Moreover, there is no general restriction on the collection of documents from abroad, it is my opinion as an attorney familiar with the Japanese legal system that the Japanese courts would admit this information in the proceeding against 3M Japan.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this __21st__ day of April 2023, at Tokyo, Japan.

Kenji Kuroda
Attorney-at-law