IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| NIPPON CARBIDE INDUSTRIES CO. INC., | Case No. 23-MC-43 (LIB) |
| Applicant, | |
| v. | **MEMORANDUM OF LAW IN SUPPORT OF 3M COMPANY'S MOTION TO QUASH SUBPOENA** |
| 3M COMPANY, | |
| Respondent. | |

Nippon Carbide Industries Co. Inc. ("NCI") has been embroiled in patent litigation against foreign 3M Company subsidiaries for more than a decade. NCI sued 3M Company's German subsidiary, 3M Deutschland, more than ten years ago. And it sued 3M Company's Japan subsidiaries more than four years ago. Both cases involve the same technology—a reflective sheeting material used in the fabrication of reflective license plates, traffic signs, and similar products. Both cases have involved extensive disclosures to NCI and to court appointed experts, not to mention proceedings to ensure the completeness of those disclosures. 3M Company's subsidiaries have therefore *already* been forced to disclose or provide subject to expert review documents and information relating to the raw materials used including 3M Company's Sheet Rolls product and to their own sales and profits from selling their relevant products in their respective markets. In Germany, NCI affirmatively accepted the completeness of 3M Japan's disclosures.

And in Japan, the courts have repeatedly denied NCI's requests for additional disclosures. NCI has thus received everything to which it is entitled in these long-running litigations.

But NCI wants more. In an attempted end-run around the disclosure limitations in Germany and Japan, NCI has now served 3M Company with a U.S. subpoena pursuant to 28 U.S.C. § 1782. It seeks records of 3M Company's sales to its German and Japanese subsidiaries of the Sheet Rolls from which allegedly infringing products were processed. This would entail the production of historical business records that are unnecessary due to the extensive information already disclosed in the foreign court proceedings. It would also entail the production of current, competitively sensitive sales and other information *to a* competitor, which the foreign courts have declined to require. And it would entail the production of records regarding non-infringing products. Specifically, 3M Company changed the design of the Sheet Rolls in 2011, and the German and Japanese courts have each determined that products produced from those later Sheet Rolls do not infringe NCI's patents. Yet NCI's subpoena demands the disclosure of documents up to the present—more than a decade after the design change.

None of this can be justified. The Supreme Court has warned against allowing use of Section 1782 to "conceal[] an attempt to circumvent foreign proof-gathering restrictions or other policies." *Intel Corp. v. Adv. Micro Devices, Inc*., 542

U.S. 241, 265, 124 S. Ct. 2466, 2483, 159 L. Ed. 2d 355 (2004). It has directed that this statute should not be used to engage in unduly intrusive or burdensome discovery, particularly upon non-parties and where foreign courts have already rejected attempts to obtain the same information. NCI's subpoena ignores all of this, and it should be quashed in its entirety.

FACTS AND PROCEDURAL HISTORY

## I.    Background

3M Company is a Minnesota-based multinational corporation with affiliates around the world. Patel Dec. ¶ 2. 3M Company manufactures consumer, office, industrial, and other products. *Id.* ¶ 3. Among other things, 3M Company manufactures and sells retroreflective sheeting materials used to manufacture reflective road signs and other products. *Id.* ¶ 4. 3M Company produces and sells its retroreflective sheeting as "Sheet Rolls." *Id*. 3M Company sells Sheet Rolls and related products to subsidiaries, including 3M Deutschland and 3M Japan. *Id.* ¶ 2. These Sheet Rolls are processed to fill specific customer orders. *Id.* ¶ 4.

NCI is a Japanese corporation that manufactures chemicals, ceramic substrates, films, and other products. NCI *Ex Parte* Application ¶ 9. Among other things, NCI sells its own retroreflective sheeting products. *Id.* NCI holds foreign patents on certain retroreflective sheeting products. *Id.* ¶ 10. NCI is a direct competitor of 3M Company in certain markets for the types of reflective film discussed above. *Id.* ¶¶ 10-12.

As detailed below, in 2011, NCI sued 3M Deutschland in Germany. *See generally* Graetsch Dec. ¶¶ 14-16. Then, in 2018, NCI sued 3M Japan in Japan. *See generally* Ohno Dec. ¶¶ 7-8. In both cases, NCI has claimed that 3M Company's foreign subsidiaries have infringed NCI's foreign patents by selling products manufactured by using 3M Company's Sheet Rolls to customers in Germany and Japan. *See generally* Graetsch Dec. *and* Ohno Dec. As discussed below, both cases have been extensively litigated, and 3M Company's foreign subsidiaries have been compelled by court order to disclose sales, profits, and other information relative to NCI's alleged damages in both matters. *See generally id.*

## II.    3M Deutschland has already disclosed extensive information.

Daniel Graetsch is an attorney representing 3M Deutschland GmbH ("3M Deutschland") in NCI's German patent infringement litigation. Graetsch Dec. ¶ 1. He has submitted a declaration in this matter summarizing the foreign proceedings with NCI in Germany, which began in 2011. Graetsch Dec. ¶¶ 1, 4.

By way of background, German patent infringement proceedings generally have three phases. *Id.* ¶¶ 5-6. In Phase 1, the German court determines whether there is a valid claim of patent infringement on the merits and (if so) grants the patent owner an accounting of the defendant's profits from infringement. *Id.* ¶ 7. Phase 2 then involves enforcement of the accounting claim relating to the defendant's sales and profits on infringing goods. *Id.* ¶ 8. This includes disclosure of the defendant's purchases from suppliers; the defendant's customer names; and

4

the defendant's sales, costs, and profits on infringing products. *Id.* If a defendant's disclosures are inaccurate or incomplete, then the court can compel additional disclosures under penalty of sanctions including imprisonment. *Id*. ¶¶ 9-11. Once a patent owner has received complete information, it can move to Phase 3 by commencing an action to recover damages. *Id.* ¶ 12.

Here, NCI commenced its patent infringement action against 3M Deutschland in 2011. *Id*. ¶ 14. It alleged that 3M Company's High Intensity Prismatic Reflective Sheeting 3930 Series product that 3M Deutschland sold infringed two of NCI's European patents: EP '511 and EP '444. *Id.* On Jan. 24, 2012, a German court found patent infringement by 3M Deutschland and ordered an accounting. *Id.* ¶ 15. A German court of appeals affirmed. *Id.* ¶ 16.

That brought the German litigation to Phase 2, enforcement of the accounting claim. Through various legal proceedings in Germany, *see id.* ¶¶ 4-11, 3M Deutschland has disclosed extensive information about its supplier of the infringing products (i.e., its parent 3M Company), including sales information like more than 30,000 invoices, and its own profits from reselling those products. *Id.* ¶¶ 19-22. 3M Deutschland has provided a comprehensive accounting of its profits from sales of those products within its market. *Id*. Importantly, after receiving supplemental information from 3M Deutschland in May 2019, NCI confirmed in

that it accepted the information as substantially complete, and NCI declined to pursue further disclosures in the German litigation. *Id.* ¶ 19.

NCI did, however, demand that 3M Deutschland provide an affidavit verifying the accuracy and completeness of all accounting information, including the sales and other information it had earlier provided. *Id*. ¶ 24. In that connection, an independent auditing firm MÖHRLE HAPP LUTHER GmbH Hamburg, Germany, part of Crowe Global ("Crowe") confirmed on April 6, 2023, that 3M Deutschland had indeed rendered a complete and accurate accounting as required by the German courts. *Id*. ¶ 23. The Managing Director of 3M Deutschland has also provided a sworn affidavit in the German litigation confirming that its accountings are complete and correct. *Id*. ¶ 24. In April 2022, before final completion of Phase 2, NCI commenced Phase 3 of its German patent litigation by filing an action for damages against 3M Deutschland. *Id*. ¶ 26.

3M Deutschland has thus *already* provided NCI with a comprehensive accounting as related to its alleged patent infringement. It has disclosed complete information about its conversion of Sheet Rolls purchased from 3M Company into smaller volumes per order. *Id*. ¶ 15, 17, 19 21, 22. This includes information about each delivery, each order number, each invoice date, each invoiced amount, a description of the material sold, the amount of material delivered, and the price per unit. *Id*. 3M Deutschland has also disclosed copies of 3M Company's invoices

for each delivery. *Id.* ¶ 22. As far as the German courts are concerned, NCI is entitled to nothing more.

In 2011, in light of the accusation of patent infringement, 3M Deutschland began selling a different new design of reflective sheeting product. *Id.* ¶¶ 16, 26. *See also* Patel Dec. ¶ 5. A German appellate court found that the new design does *not* infringe NCI's patents. Graetsch Dec. ¶ 16. As a result, NCI cannot recover damages for sales after early 2012. *Id.* The proceedings in Germany are thus restricted to sales of the old, pre-2011 design. *Id.*¶ 26. The German courts are unlikely to consider any additional information NCI might obtain through the subpoena relative to the new-design products from and after 2012. *Id.* ¶ 29.

## III.    3M Japan has also disclosed extensive information.

Seiji Ohno is an attorney representing 3M Japan in a patent infringement litigation before the Intellectual Property High Court of Japan. He has submitted a declaration in this matter summarizing the ongoing Japanese proceedings between 3M Japan and NCI. Ohno Dec. ¶ 1.

NCI filed a patent infringement lawsuit in Japan on January 16, 2018. *Id.* ¶ 7. NCI alleged that 3M Japan had sold retroreflective sheeting products that infringed NCI's Japanese patents. *Id.* Similar to 3M Deutschland, 3M Japan's accused products were processed from 3M Company's Sheet Rolls, which (as noted above) 3M Company changed in 2011, with sales of the new product commencing in early 2012. *Id.; see also* Patel Dec. ¶ 5. On September 18, 2019, a court in Japan found

that products manufactured from the old design Sheet Rolls infringed NCI's Japanese patent, but products manufactured from the new design did not. *Id.* ¶ 7.

After the finding of infringement, the Japanese case entered its damages-calculation phase. *Id.* ¶ 8. In that connection, Japanese court procedures provide two typical statutory means for obtaining evidence regarding damages. *Id.* ¶ 9. First, a party may file a request for production of documents. *Id.* ¶ 10. Second, a party may file a request to appoint an expert to calculate the damages caused by any proven patent infringement. *Id.* ¶ 11. In either case, a party may object and a court may determine whether requested documents and/or calculations are truly necessary. *Id.* ¶¶ 10 – 11.

On December 20, 2019, NCI filed a request in the Japanese litigation for 3M Japan to produce documents reflecting its sales of the old design, along with its raw material, packaging, and transportation costs relative to those products, from March 5, 2010 to December 25, 2019. *Id.* ¶ 13. In addition, NCI much more broadly sought documents reflecting information about *all* of 3M Japan's sales (not limited to the allegedly infringing products) in that same period. *Id.*

3M Japan objected to NCI's requests. *Id.* ¶ 15. It argued that the request would require 3M Japan to disclose confidential and competitively sensitive information to NCI. *Id.* In lieu of producing that information directly to NCI, 3M Japan asked the court to appoint an independent expert to review 3M Japan's

8

records and appraise matters related to damages calculation of NCI's patent infringement damages. *Id.* ¶ 14. 3M Japan argued that this would enable NCI to calculate its damages without requiring 3M Japan to disclose commercially sensitive materials directly to NCI. *Id.* ¶ 15.

On September 3, 2020, the Japanese court granted 3M Japan's request. *Id.* ¶ 16. The court appointed an outside accounting expert to review 3M Japan's documents and to submit a written report to the court. *Id.*

On January 15, 2021, after completing the required investigation, the expert submitted its report to the Japanese court. *Id.* ¶ 17. The report shows 3M Japan's sales and costs of the old design. *Id.* ¶ 18. As noted above, there had been a change in the relevant product about 2012. *Id.* ¶ 7; *see also* Patel Dec. ¶ 5. Based upon review of corporate records, the court-appointed accountant determined when 3M Japan exhausted its inventory and stopped selling products based on the old design. Ohno Dec. ¶ 18. The accountant calculated 3M Japan's sales of accused products under the old design, while excluding sales of the newer, non-infringing product. *Id.*

NCI challenged the accuracy and completeness of the court-appointed expert's report. *Id.* ¶ 19. NCI, however, made no new arguments to support its earlier requests for production of documents. *Id.* 3M Japan opposed NCI's arguments and explained that the expert's report was reliable. *Id.* ¶ 20. On May 27,

2021, the Japanese court ruled against NCI's request for production of documents based on lack of necessity. *Id.* ¶ 21. That ruling is unappealable. *Id.*

Then, on August 31, 2021, the Japanese court found that the expert's report was reliable. *Id.* ¶ 22. It noted that the expert was a court-appointed neutral with specialized knowledge in accounting, who had examined 3M Japan's accounting system and other materials. *Id.* It found that NCI had introduced no facts to cast doubt on the reliability of the results. *Id.* Like the German courts discussed above, the Japanese court thus approved the exclusion of the newer product from NCI's damages demand. *Id.*

Despite this, on January 16, 2023, NCI filed a request to appoint *another* calculation expert to recalculate its damages. *Id.* ¶ 24. 3M Japan opposed this request. *Id.* On March 9, 2023, the judge agreed with 3M Japan and stated that the court would deny NCI's request to appoint yet another calculation expert. *Id.* ¶ 25. Then, on April 10, 2023, NCI filed a new request for production of documents, repeating its claims that the expert's calculations were unreliable. *Id.* ¶ 26. 3M Japan opposed that request. *Id.* ¶ 27. On May 24, 2023, NCI and 3M Japan attended an online proceeding before a Japanese court. *Id.* ¶ 28. The judge determined that a request for production of documents filed by NCI in April 2023 should be dismissed. *Id.* The judge stated the parties *should not file any more briefs*

*and exhibits*, apart from a specific witness. *Id.* The Japanese courts are unlikely to accept any additional documents NCI might now obtain. *Id.* ¶¶ 29 – 32.

## IV. NCI subpoenas 3M Company for information that the German and Japanese courts have already denied to NCI.

After years of proceedings in Japan and Germany, on April 24, 2023, NCI filed an application in the District of Minnesota under 28 U.S.C. § 1782. ECF No. 1 (Application). It sought to subpoena 3M Company for information to be used in the pending litigation in Germany and Japan. *Id.* On May 10, 2023, the Court granted NCI's request *ex parte*. ECF No. 7 (Ex Parte Order).

NCI's subpoena demands that 3M Company produce the following documents:

1.    Documents sufficient to show the number of the Raw Prism Sheet Rolls You sold to 3M Japan Products for resale or for use in the manufacturing of 3930 Series, 2930 Series, and/or PX8470 Series products, per year, from January 1, 2010 to the present.

2.    Documents sufficient to show the quantity of the Raw Prism Sheet Rolls, in square meters, You sold to 3M Japan Products for resale or for use in the manufacturing of 3930 Series, 2930 Series, and/or PX8470 Series products, per year, from January 1, 2010 to the present.

3.    Documents to sufficient to show the amounts, per year, You charged 3M Japan Products for the Raw Prism Sheet Rolls You sold to 3M Japan Products for resale or for use in the manufacturing of 3930 Series, 2930 Series, and/or PX8470 Series products, from January 1, 2010 to the present.

4.    Documents sufficient to show the number of the Raw Prism Sheet Rolls You sold to 3M Deutschland for use in the

manufacturing of High Intensity Prismatic Reflective Sheeting 3930 Series products, per year, from October 1, 2006 to the present.

5.      Documents sufficient to show the quantity of the Raw Prism Sheet Rolls, in square meters, You sold to 3M Deutschland for use in the manufacturing of High Intensity Prismatic Reflective Sheeting 3930 Series products, per year, from October l, 2006 to the present.

6.      Documents sufficient to show the amounts, per year, You charged 3M Deutschland for the Raw Prism Sheet Rolls You sold to 3M Deutschland for use in the manufacturing of High Intensity Prismatic Reflective Sheeting 3930 Series products, from October l, 2006 to the present.

NCI has *already* sought and received information from 3M Deutschland and 3M Japan related to costs of these materials, including the Sheet Rolls purchased from 3M Company. Graetsch Dec. ¶ 20-23, Ohno Dec. ¶ 18.

3M Company now moves to quash.

## ARGUMENT

NCI seeks information it either (a) already has or (b) is not entitled to in the foreign litigation. The Supreme Court has made clear that a request for discovery under 28 U.S.C. § 1782 should be rejected if it "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S. at 264–65. Requests that are "unduly intrusive or burdensome" should likewise be "rejected or trimmed." *Id.* at 265 (citations omitted).

When faced with an application for discovery under § 1782, courts consider (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature of the foreign tribunal, the character of the foreign proceedings, and the receptivity of the foreign tribunal to federal judicial assistance; (3) whether the request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies; and (4) whether the request is unduly intrusive or burdensome. *Id.* at 264-65; *accord In re Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 952 (D. Minn. 2007). "Where such prerequisites are met, a court has the discretion to grant an application under Section 1782 if doing so would (1) provide an efficient means of assistance to participants in international litigation, and (2) encourage foreign countries to provide reciprocal means of assistance to United States courts and litigants." *Hallmark*, 534 F. Supp. 2d at 952.

Even after a court has issued an *ex parte* subpoena under § 1782, the recipient may move to quash or modify, and the issuing court must then consider whether the subpoena exceeds the permissible scope of discovery under § 1782 and under the Federal Rules of Civil Procedure. *See, e.g., In re Plowiecki*, No. CV 21-23 (JRT/BRT), 2021 WL 4973762, at *8 (D. Minn. Oct. 26, 2021). Under Rule 26, the scope of discovery includes consideration of "the importance of the issues at stake, the parties' relative access to relevant information, the importance of the discovery

in resolving the issues, and whether the burden or expense of discovery outweighs the likely benefit." *Id. at *5.* And Rule 45 requires courts to consider "whether the subpoena subjects a person to undue burden or requires disclosing confidential information." *Id.*

Based on these and other considerations, courts have not hesitated to deny § 1782 petitions or to quash § 1782 subpoenas. For example, in *Andover Healthcare, Inc. v. 3M Co.*, 2014 WL 4978476, at *1 (D. Minn. Oct. 6, 2014), a manufacturer of latex-free bandages had sued 3M Company in Germany for patent infringement. There, as here, the manufacturer had sought and been denied certain information in the German courts. *Id.* The manufacturer then filed a § 1782 petition in the District of Minnesota, seeking an order compelling 3M Company to produce those same documents. *Id.* at *2. 3M Company moved to quash, arguing (among other things) that the manufacturer had "made the same discovery request in the German litigation, and this petition is a means of circumventing the German court's judgment," and that the subpoena sought production of competitively sensitive information that might not receive appropriate protection in the German litigation. *Id.* The Court agreed with 3M Company and denied the requested Section 1782 subpoena. *Id.* at *8, *aff'd,* 817 F.3d 621 (8th Cir. 2016).

In *Plowiecki*, 2021 WL 4973762 at *1-3, the District of Minnesota issued a subpoena for documents and a deposition under § 1782, but then granted a motion

to quash the document subpoena. There, a French medical device company was embroiled in shareholder litigation in France over the removal of a board member. *Id.* *1. It filed a § 1782 petition to subpoena a Minnesota investment bank for records over its role in a potential sale of the company. *Id.* at *2. The Court issued the requested subpoenas but later granted the bank's motion to quash the document subpoena. *Id.* at *3. This was because the subpoena requested confidential information that might not receive appropriate protection in the French courts, and because the subpoena placed "a great burden on [the bank] especially in light of the fact that [the subpoenaing party] already obtained much of the information requested" in the French proceedings. *Id.*

All of the relevant factors mandate quashing NCI's subpoena.

**A.    The subpoena attempts to circumvent foreign discovery limits.**

As discussed above, NCI has been embroiled in patent litigation against 3M Deutschland and 3M Japan for years. The foreign proceedings have already facilitated disclosure or examination of extensive information related to 3M Deutschland and 3M Japan's costs of materials, including 3M Company's Sheet Rolls used to manufacture allegedly infringing products. Among other things:

- 3M Deutschland has made financial disclosures that NCI *itself* acknowledged were complete. An independent accounting firm reviewed and certified the completeness of 3M Deutschland's

disclosures. The Managing Director of 3M Deutschland has declared under risk of sanction including imprisonment that 3M Deutschland's disclosures were complete.

- 3M Japan has subjected its records to review by a court-ordered accountant. NCI's subsequent requests for additional information or expert review have been rejected by the Japanese courts. And the Japanese courts have made clear that the parties should not file any additional documents.

Amid all that, NCI now subpoenas 3M Company for documents regarding 3M Deutschland and 3M Japan's purchases of Sheet Rolls from 3M Company. Whatever grievance NCI may have with the disclosure limits the German and Japanese courts have imposed, Section 1782 is not a vehicle to avoid or appeal an unfavorable discovery decision by a foreign tribunal. *In re App. of Microsoft Corp.*, 428 F.Supp.2d 188, 196 (S.D.N.Y. 2006); *see also Andover*, 2014 WL 4978476, at *7 ("Because the same discovery request is currently pending before the German court, it appears that Andover is simply attempting to avoid or preempt an unfavorable decision by that court.").

Nor is it this Court's place to revisit or liberalize German and Japanese disclosure obligations. "Drawing discoverability lines based on relevance and proportionality in such cases is most efficiently accomplished where a court has an

16

intimate familiarity with and control over the proceedings, and an understanding of the relevant legal standards." *Saint-Gobain Adfors S.A.S. v. 3M Company*, 2020 WL 6111632, at *5 (D. Minn. Oct. 16, 2020). And this Court should not "attempt to define the parameters of discovery" in foreign patent litigation, given its "lack of comparable familiarity with the applicable patent laws and the parties' competing views regarding the proper scope of discovery." *Id.;* s*ee also In re: Baycol Prods. Lit.*, 2003 WL 22331293, at *3 (D. Minn. May 6, 2003) (citing *John Deere Ltd. v. Sperry Corp.*, 754 F.2d 132, 135 (3d Cir. 1985)) ("The discovery [in a section 1782 discovery request] should not be granted . . . if to do so would 'trench[] upon the clearly established procedures of a foreign tribunal.'"); *In re Appl.* o*f Gilead Pharmasset LLC*, 2015 WL 1903957, at *12 (D. Del. Apr. 14, 2015) ("[A] perception that an applicant has side-stepped less-than-favorable discovery rules by resorting immediately to § 1782 can be a factor in a court's analysis."). The subpoena should be quashed for this reason alone.

### B.    The foreign courts will not accept additional information.

Courts also deny requests for discovery where the foreign tribunal "does not need or want the information sought." *Andover*, 2014 WL 4978476, at *6 (citing *Cryolife, Inc. v. Tenaxis Med., Inc.*, 2009 WL 88348, at *3 (N.D. Cal. Jan. 13, 2009)). The Supreme Court has made clear that courts should consider "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S.

federal-court judicial assistance." *Intel Corp.*, 542 U.S. at 264 (citation omitted).

"The question under this factor is not whether the foreign tribunal has discovery

laws that would permit discovery of the requested materials, but rather whether

the foreign tribunal would consider evidence obtained through a § 1782 petition."

*Andover*, 2014 WL 4978476, at *6 (citation omitted).

Here, NCI launched its foray into this Court *on its own*—without a letter of

request from a court in Germany or Japan seeking this Court's assistance in

obtaining discovery for use in those courts. *See* 28 U.S.C. § 1782 (noting that an

order allowing discovery "may be made pursuant to a letter rogatory issued, or

request made, by a foreign or international tribunal <u>or</u> upon the application of any

interested person") (emphasis added). There is no reason to think the courts in

Germany and Japan would accept any new information NCI might obtain through

its subpoena for at least two reasons.

First and foremost, the German and Japanese court proceedings have

*already* facilitated all necessary disclosures—and ensured their completeness

consistent with local law. This included an audit of 3M Deutschland's accounting

by the independent auditing firm Crowe LLP and a sworn affidavit from the

Managing Director of 3M Deutschland confirming that the accountings are

complete and correct. In Japan, it included a court-ordered, independent

examination of 3M Japan's financial records.  The Japanese court has expressly

rejected NCI's repeated requests for additional disclosures or accounting, and it has closed the door on additional submissions. There is no reason to think that these foreign courts would now reopen their long-running processes to consider whatever evidence NCI might obtain through its subpoena upon 3M Company.

Second, the subpoena seeks irrelevant documents. As noted above, the German appellate court has ruled that 3M Deutschland's liability for patent infringement begins on January 27, 2007 and not before (EP '511). Graetsch Dec. ¶¶ 16, 26. 3M Company stopped selling the old design Sheet Rolls in 2012. Patel Dec. ¶ 5. Products manufactured from the new design do not infringe any German or Japanese patents. Graetsch Dec. ¶¶ 16, 26; Ohno Dec. ¶¶ 7, 32. Ignoring this, NCI's subpoena demands the production of sales and financial records from October 1, 2006 to the present. *See* Subpoena Requests 4, 5, 6. This is (again) an attempt to expand the universe of documents beyond the relevancy limits already decided by the German and Japanese courts. The courts and Germany and Japan are unlikely to receive or consider the information NCI now seeks from 3M Company. This is another reason to quash the Subpoena.

### C.    3M Company's connection to the foreign proceedings supports quashing the subpoena.

Under *Intel,* courts also consider the connection of the person from whom discovery is sought to the foreign proceeding. *See Intel Corp.*, 542 U.S. at 264. "[W]hen the person from whom discovery is sought is a participant in the foreign

proceeding..., the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Id.* This is because "[a] foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence," whereas "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach [and] their evidence ... may be unobtainable absent § 1782(a) aid." *Id.*

Parent companies like 3M Company are considered separate legal entities from their corporate subsidiaries for purposes of § 1782. *See In re del Valle Ruiz*, 939 F.3d 520, 523, 525 (2d Cir. 2019) (evaluating § 1782 request from foreign parent company separately from its U.S. affiliate). Even so, the information NCI demands from 3M Company is of the very same kind (records of 3M Company's intracompany sales of Sheet Rolls to 3M Deutschland and 3M Japan) already sought in the foreign litigation. Thus, while 3M Company is not a direct party to the foreign proceedings, this factor also favors quashing the subpoena.

**D.    The subpoena is unduly intrusive and burdensome.**

Under both *Intel* and the Federal Rules of Civil Procedure, subpoenas that are unduly intrusive or burdensome should be rejected. *See Intel Corp.*, 542 U.S. at 265; *Plowiecki*, 2021 WL 4973762, at *8 (courts should consider the limits of discovery under Rule 26 and 45 when considering whether to issue or quash a § 1782 subpoena); Fed. R. Civ. P. 45(d)(3) ("On timely motion, the court for the district where compliance is required must quash or modify a subpoena that . . .

20

subjects a person to undue burden."). Courts have the power to enter orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way. Fed. R. Civ. P. 26(c)(1)(G). *See, e.g., Plowiecki*, 2021 WL 4973762, at *1-3 (quashing § 1782 subpoena for documents containing confidential information that might not receive appropriate protection abroad, where the subpoenaing party had "already obtained much of the information requested" in the foreign proceedings); *Andover Healthcare*, 2014 WL 4978476, at *4-6 (finding § 1782 subpoena upon 3M Company unduly intrusive because it sought production of competitively sensitive information that might not receive appropriate protection abroad).

This factor also supports quashing the subpoena. As discussed above, NCI has already been litigating against 3M Deutschland for more than ten years and against 3M Japan for more than four years. The presiding courts have *already* compelled disclosure and examination of extensive information that allows NCI to calculate its damages from sales of the old design products. And those courts have considered *and denied* requests for additional information. In these circumstances, the imposition of *any* burden upon 3M Company to produce the same or additional information is unwarranted and undue.

The burden is particularly severe because NCI is a direct competitor of 3M Company and its foreign subsidiaries. The German and Japanese courts have been

careful to prevent NCI from obtaining confidential information it might use to work competitive harm. Among other things, they have limited NCI to receiving information about allegedly infringing sales ten-plus years ago. And the Japanese court has denied NCI's multiple requests for direct access to confidential business information, instead allowing only a court-appointed accountant to review and analyze that information.

Ignoring this, NCI now seeks *direct access* to information about 3M Company's current sales—by volume and dollar value. Such information is competitively sensitive, but neither 3M Company nor this Court would have any practical ability to police the disclosure or use of that information outside the United States. Any risk of disclosure or misuse of 3M Company's confidential information cannot be justified, given that NCI already has all the information the German and Japanese courts have deemed necessary to prosecute its claims.

In these circumstances, the only way to prevent undue burden and competitive harm upon 3M Company is to quash the subpoena in its entirety.

## CONCLUSION

As far as the German and Japanese courts are concerned, NCI already has everything it needs to prosecute its claims for patent damages. NCI can demonstrate no need for or entitlement to the information it now demands from 3M Company. Its subpoena upon 3M Company cannot be justified, and it should be quashed in its entirety.

Dated: June 16, 2023                    **GREENE ESPEL PLLP**


 s/ Mark L. Johnson
Mark L. Johnson, Reg. No. 0345520
Farah N. Famouri, Reg. No. 0403295
222 S. Ninth Street, Suite 2200
Minneapolis, MN 55402
mjohnson@greeneespel.com
ffamouri@greeneespel.com
(612) 373-0830

Attorneys for 3M Company